IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | |
| § | No. 1:24-CR-074-RP |
| § | |
| JASON PENNEY § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO WITHDRAW GUILTY PLEA**

The United States of America files its Response to Defendant's Motion to Withdraw Guilty Plea, and would respectfully show the Court as follows:

**STATEMENT OF FACTS**

In April 2019, the FBI initiated an investigation into the activities of Jason Penney. The investigation showed that from at least 2014 through December 2022, Mr. Penney and his coconspirators conducted a scheme to defraud computer hardware financing companies. Plea Agreement [#3] at 3-4. PENNEY submitted materially false loan applications to the financing companies on behalf of struggling small businesses in order to obtain "rebate loans" for the small businesses, keeping half of the loan amount for himself and his coconspirators. *Id*. at 3-7. The conspiracy fraudulently obtained over $15 million in loan proceeds and Mr. Penney personally received in total approximately $4.5 million. *Id*. at 8.

In December 2022, FBI obtained and executed a search warrant for Mr. Penney's residence in Florida. Shortly after the search was conducted, a Florida attorney hired by Mr. Penney contacted the government and asked to schedule a debrief with the government pursuant to a proffer agreement. The parties agreed to meet in short order and a proffer letter was provided to Mr. Penney's attorney on December 21, 2022. Prior to that meeting, Mr. Penney changed

Government's Response - Page 1

counsel and hired Guy Womack to represent him, and the debrief was rescheduled to January 23, 2023 to accommodate Mr. Womack's schedule. At Mr. Womack's request, that meeting was later canceled and rescheduled for March 8, 2023. Prior to Penney's debrief, Mr. Womack called the attorney for the government and they discussed a summary of the allegations and evidence against Penney.

On March 8, 2023, Mr. Penney arrived at the U.S. Attorney's Office in Austin, Texas for his scheduled debrief. Mr. Penney was accompanied by Mr. Womack and a second attorney, Jenna Hale. Mr. Penney debriefed with the government for approximately three hours. He admitted that he was behind the scheme uncovered by the FBI's investigation, admitted making false representations to the computer hardware financing companies, admitted that half of the loan proceeds would go to the small business and half would go to Mr. Penney and his coconspirators, admitted distributing a percentage of the fraudulently obtained funds to his coconspirators, and admitted trying to hide his involvement in the scheme by using multiple aliases, multiple business names, and used a family member to open bank accounts and rent P.O. boxes.[1]

---

[1] Mr. Penney debriefed pursuant to the standard proffer agreement used in the Western District of Texas. That agreement allows the government to use and reveal statements made by Mr. Penney during the debrief in "preliminary hearings ancillary to the government's direct case at trial." The motion to withdraw guilty plea is a preliminary hearing ancillary to the government's direct case at trial, and thus the terms of the proffer agreement allow the government to use his statements.

The proffer agreement also permits the government to use Mr. Penney's statements "[i]n the event that [Mr. Penney] advances or offers any argument…which is materially different from any statement made (or other information provided) during the proffer." Mr. Penney asserts his innocence in his motion to withdraw guilty plea, which is materially different from the statements and information provided during his proffer, thus authorizing the use of those statements by the government in this response.

The undersigned conferred with defense counsel prior to disclosing Mr. Penney's statements made pursuant to the proffer agreement. Defense counsel did not raise any objection to the disclosure or legal reason the statements could not be disclosed, but there is no agreement between the parties that disclosure is permitted.

**Government's Response - Page 2**

Some of the government's evidence against Penney was disclosed to Penney during the debrief in order to inform the conversation. For example, an invoice submitted by Penney on behalf of a customer to the victim included in the Indictment in this case in 2019 was shown to Penney and discussed in detail. That invoice sought $100,000 from the victim. Penney admitted that the true purpose of submitting the invoice was to obtain the cash from the victim because the computer system that was actually purchased cost only $1,100. Penney admitted that 50% of the loan proceeds ($50,000) were going to the customer and not being used to purchase the computer system claimed in the invoice he submitted to the victim. Penney admitted that the other half of the loan was kept by Penney, who would pay the broker who brought the customer to Penney 20%. Penney acknowledged that the victim did not know about the rebate plan for the money they financed.

Mr. Penney also offered to cooperate with the government's ongoing investigation and assist with the collection of evidence against his coconspirators. Specifically, over the course of several months, Mr. Penney conducted several recorded calls with his coconspirators to help establish their knowledge of and involvement in the scheme. Based in large part on this cooperation, the government developed sufficient evidence to charge one of those conspirators, David Kalderon, who was indicted on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 in Case No. 24-039-RP. Mr. Kalderon was indicted on February 20, 2024.

After Mr. Kalderon was indicted, Mr. Penney agreed to a plea agreement with the government. Mr. Penney agreed to plead guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, charged by information, and Mr. Penney agreed to cooperate as part of that plea agreement. Plea Agreement [#3] at 1, 8-10. Mr. Penney signed the plea agreement on April 4, 2024. *Id*. at 20. Mr. Penney entered his plea and waived indictment before

Magistrate Judge Susan Hightower on April 30, 2024. The Court accepted Mr. Penney's plea on May 17, 2024.

For months following his plea, Mr. Penney continued to cooperate with the government. Specifically, he agreed to allow the government to inform Mr. Kalderon that Mr. Penney was cooperating with the government and would testify against Mr. Kalderon should he exercise his right to a trial. Relying on Mr. Penney's promise to cooperate, and to give him the best opportunity for the largest possible 5K should Mr. Kalderon decide to go to trial, on three separate occasions the government did not oppose Mr. Penney's requests to continue his sentencing so that it could be set for after a likely resolution of Mr. Kalderon's case. *See* Def.'s Unopposed Motions for Continuance [#25, #34, #37].

In September 2024, after Mr. Penney's PSR was issued in July 2024, Mr. Penney elected to substitute his current counsel, Dan Dworin, for Mr. Womack. On December 12, 2024, Mr. Penney filed his motion to withdraw guilty plea. Mr. Penney's sentencing is currently set for January 31, 2025. Mr. Penney now asserts his innocence of the charges against him and claims he would not have entered his plea if he had reviewed discovery provided to his current counsel.

## APPLICABLE LAW AND ANALYSIS

### A.   Legal Standard

Fed. R. Crim. P. 11(d)(2)(B) states that a "defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, . . . if the defendant can show a fair and just reason for requesting the withdrawal." The Fifth Circuit established seven factors to determine when a defendant should be allowed to withdraw a guilty plea. *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984). A court will consider whether (1) the defendant asserted his innocence, (2) withdrawal would prejudice the government, (3) the defendant delayed in filing

the withdrawal motion, (4) withdrawal would inconvenience the court, (5) close assistance of counsel was available to the defendant, (6) the plea was knowing and voluntary, and (7) withdrawal would waste judicial resources. *Carr*, 740 F.2d at 343-44. Also, "as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading or the reasons why a defendant delayed in making his withdrawal motion." *Id*. "No single factor or combination of factors mandates a particular result." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991). The *Carr* factors "are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor." *United States v. McKnight,* 570 F.3d 641, 645–46 (5th Cir. 2009). "[T]he defendant has the burden of proving the withdrawal is justified." *Id.*

When courts apply the *Carr* factors, certain guidelines are helpful. *United States v. Morrow,* 537 F.2d 120, 146 (5th Cir. 1976). For example, the longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion. *Id.* It is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence. Instead, the right to do so is within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion. *Id.; see also United States v. Simmons,* 497 F.2d 177 (5th Cir. 1974).

In this case, Penney fails to satisfy any of the factors that would allow him to withdraw his guilty plea.

### B.     Penney has not asserted actual innocence of the charges.

Under the first prong of the *Carr* test, Penney simply "asserts his innocence of the charges against him." Mot. to Withdraw Guilty Plea at 1. He does not specifically dispute nor offer any evidence in his motion to rebut the detailed factual basis contained in the plea

agreement that he signed with the government. In that agreement, Penney admitted to conspiring with David Kalderon and others "to defraud computer hardware financing companies." Plea Agreement at 4. The agreement sets forth several details about the operation of the scheme and Penney's role in the conspiracy. *Id*. at 3-8. Penney admitted to the same or similar information regarding the conspiracy when he debriefed with the government in March 2023. The lack of any evidence in Penney's motion showing more than a naked assertion that he is not guilty of the crime fails to meet the first prong of the test. *See United States v. Mendez*, 447 Fed. App'x 577 (5th Cir. 2011) (unpublished) (a mere assertion of innocence is not sufficient to withdraw a guilty plea where defendant swears under oath that the factual basis is correct); *United States v. Martinez*, 344 Fed. App'x 975 (5th Cir. 2009) (belated claim of innocence, which was contrary to the sworn testimony at rearraignment, is not credible); *McKnight*, 570 F.3d at 649 ("During rearraignment, [defendant] made several affirmative declarations that he was guilty as charged. Because 'solemn declarations in open court carry a strong presumption of verity,' the district court did not abuse its discretion in placing little weight on [defendant's] assertion of innocence" in evaluating the *Carr* factors) (quoting *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001))).

  C. **Withdrawal would prejudice the government.**

Under the second factor of the *Carr* test, withdrawal of Penney's guilty plea would prejudice the government. Many of the facts underlying the allegations against Penney and the transactions on which they are based occurred many years ago, going back to at least 2014. Depending on the specific timing of those transactions, there are likely charges for which the statute of limitations has expired between the execution of the plea agreement and its withdrawal

that would bar the government from bringing those charges.[2] That bar would prejudice the government if withdrawal were permitted.

Additionally, this case was complex and involved multiple federal search warrants and grand jury subpoenas. The lengthy delay caused by Penney complicates the government's ability to try the case in 2025. Witnesses that were easily accessible are now more difficult to gather. For example, the lead case agent on this case has left his position at FBI and retired. Similar hurdles concerning other witnesses exist. Likewise, the prosecutor, investigators, and agents have moved on to other pressing matters in reliance of Penney's knowing and voluntary guilty plea. Based on this rationale, Penney's motion under the second prong of *Carr* is without merit. Even if the Court determines this factor does not weigh in the government's favor, the "mere lack of prejudice does not warrant allowing a withdrawal." *Mendez*, 447 Fed. App'x at 578 (citing *Carr*, 740 F.2d at 345).

**D.    Penney significantly delayed in bringing his motion to withdraw guilty plea.**

Under the third factor, Penney's significant delay in bringing his motion to withdraw weighs heavily in favor of denial. Counsel for Penney filed this motion approximately seven and a half months after entering his guilty plea, almost seven months after this Court accepted that plea, over four months after the PSR was prepared, and more than two months after Mr. Dworin substituted in as defense counsel. This delay does not support Armond's motion to withdraw his plea, but rather is a strong factor for denial.  "The purpose of permitting withdrawal is to allow a defendant to undo an unknowing plea; it is not to let a defendant make a tactical decision to plead guilty, wait a few weeks, and then withdraw if he believes he made a bad choice." *Id*. at

---

[2] In fact, in recognition of this possibility, in May 2023 Mr. Penney and his attorney at the time, Mr. Womack, entered into a Statute of Limitations Tolling Agreement with the government which tolled the limitations period for certain violations of federal law until December 31, 2023.

**Government's Response - Page 7**

577 (citing *Carr*, 740 F.2d at 345). Months-long delays in filing a motion to delay have been frequently found to weigh against permitting withdrawal – in fact, in *Carr* the Fifth Circuit found a delay of 21 days before filing a motion to withdraw weighed against a defendant's ability to withdraw his plea. *Carr*, 740 F.2d at 345; *see also United States v. McLean*, 419 Fed. App'x 473, 475 (5th Cir. 2011) (unpublished) (seven month delay was unreasonable); *United States v. Blancarte*, No. 4:09-CR-23, 2010 WL 1524783, at *3-4 (E.D. Tex. Mar. 26, 2010) (finding a two-month delay strongly favors denying the motion); *Mendez*, 447 Fed. App'x at 577 (finding defendant delayed in filing his withdrawal motion where he did not seek to withdraw his guilty plea until "four months after he pleaded guilty, more than two months after the presentence report was prepared").

   **E. Withdrawal would inconvenience the Court and waste judicial resources.**

The fourth and seventh prongs relate to the effect of the withdrawal on the Court. Given the lengthy history of this case and its age, when combined with the patience of the Court to date, the Court has already been inconvenienced. To now allow Penney to withdraw his guilty plea and order a jury trial would be a waste of judicial resources. As noted in his plea bargain and corroborated by his debrief and cooperation with the government, the evidence pertaining to Penney's role in the conspiracy is strong and convincing. Based on all these facts, a trial at this point would constitute a waste of the Court's resources. *See, e.g.*, *McKnight*, 570 F.3d at 650 (upholding district court's determination that even a short trial would inconvenience the court and waste judicial resources).

   **F. Penney had the close assistance of counsel and his plea was knowing and voluntary.**

Penney's argument is focused on the fifth and sixth *Carr* factors, namely whether the "close assistance of counsel" was available to him and whether the plea was "knowing and

Government's Response - Page 8

voluntary." Penney argues that because his prior counsel, Mr. Womack, did not obtain discovery from the government, he was thereby deprived of "close assistance of counsel" and his plea was not "knowing and voluntary." Def.'s Mot. to Withdraw Plea Agreement at 3. The government does not dispute that Mr. Womack did not formally obtain discovery from the government prior to Penney's plea, but that mere fact does not establish that Penney was deprived of "close assistance of counsel" or make his plea not "knowing and voluntary."

The Fifth Circuit has explained that close assistance of counsel under Rule 11(d)(2)(B) and "constitutionally ineffective assistance of counsel are distinct issues." *McKnight*, 570 F.3d at 646. Ineffective assistance is a basis for invalidating a conviction under the Sixth Amendment and not relevant to the decision of whether a defendant was denied close assistance of counsel. *Id*. The question of whether a defendant received the close assistance of counsel "requires a fact-intensive inquiry." *Id*.

In this case, the evidence shows that Penney did receive the close assistance of counsel. Penney has been represented by counsel since shortly after learning of the government's search of his residence in Florida in December 2022. His first and his second lawyers both reached out to the government to request Penney be given the opportunity to debrief and cooperate with the government at a very early stage. Prior to Penney's debrief, Mr. Womack called the attorney for the government and they discussed a summary of the allegations and evidence against Penney. It is not unusual for a defendant to request to debrief and cooperate at an early stage in an investigation and prior to being charged. Experienced defense attorneys will often advise their clients to debrief and cooperate with the government at the earliest possible stage so that they can get the best possible chance for a favorable sentencing recommendation, especially when a defendant readily acknowledges his guilt at the outset. Often that initial debrief and agreement to

cooperate occurs before the defendant has been charged and before the government has produced discovery.[3] Although not privy to conversations between an accused and his attorney, the government believes that such early cooperation is even more likely to occur when a defendant readily acknowledges his criminal activity and knows what he is being accused of, as was evidence in this case by Penney's three-hour initial debrief in which he detailed the scheme he was involved in and corroborated the evidence gathered through the investigation. Some of the government's evidence was revealed to Penney during his proffer and he would have been aware of the inculpatory evidence gathered by the government when his house was searched. Moreover, his continued cooperation with the ongoing investigation and assistance in gathering evidence against other coconspirators confirmed his role and participation in the scheme.

Penney continued to have the close assistance of counsel throughout this case. Mr. Womack represented Penney during his plea agreement negotiations with the government, negotiating the fine details of the factual basis and the forfeiture provisions of that agreement. For example, Mr. Womack negotiated to not have an agreement regarding the forfeiture of Penney's current residence provided for in the plea agreement, leaving that determination up to the Court at sentencing. Mr. Womack represented Penney at the plea hearing and stated that he had enough time to discuss the case with Penney, including the charges and any defenses to those charges. Plea Tran. at 6:23—7:5. The Fifth Circuit has found that a Defendant's plea pursuant to a "negotiated a plea agreement" weighs in favor of finding close assistance of counsel. *See McKnight,* 570 F.3d at 646–47. Importantly, at his plea hearing, Penney, under oath, affirmed that he had enough time to speak with counsel, discussed the charges and any possible defenses, and was satisfied with Mr. Womack's representation of him. Plea Tran. at 7:20—8:9;

---

[3] Typically the undersigned does not provide discovery to defense counsel prior to charging a defendant.

**Government's Response - Page 10**

*see also United States v. Rodriguez,* 306 Fed. App'x 135, 138 (5th Cir. 2009) (unpublished) (finding no abuse of discretion in denial of motion to withdraw, noting that the defendant "indicated that he was satisfied with the representation of counsel during his plea colloquy"); *United States v. Morris,* 85 Fed. App'x 373, 374 (5th Cir. 2003) (unpublished) ("There is no support in the record for Defendant's assertion that he did not have close assistance of counsel. Defendant stated at the guilty plea hearing that he was satisfied with his counsel's representation and that his counsel had discussed his entire case with him."). Penney also stated he read and understood the plea agreement, discussed it with counsel, and that he agreed to be bound by it. Plea Tran. at 9:12-22. Penney also confirmed that the factual basis in the plea agreement was true and accurate and that he did the things he was accused of doing. *Id*. at 17:6-13.

  Mr. Womack continued to represent Penney for several months after the plea, including by submitting objections to the draft PSR that remain pending. In light of Penney's early admission of guilt, acceptance of responsibility, detailed debrief, agreement to plead guilty, confirmation of his agreement to plead guilty and the factual basis for said plea, and ongoing cooperation with the government's investigation, the mere fact that he did not formally obtain or seek to obtain discovery from the government prior to his client being charged and pleading guilty does not establish that Penney lacked the close assistance of counsel. *See, e.g., McLean*, 419 Fed. App'x at *1-2 (upholding a denial of a motion to withdraw a guilty plea despite production of incomplete discovery).

  Nor has Penney established that his plea was not knowing and voluntary. "For a plea to be knowing and voluntary, 'the defendant must be advised of and understand the consequences of the [guilty] plea.'" *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992). Defendant must have notice of the nature of the charges against him, he must understand the consequences

of his plea, and the nature of the constitutional protections he is waiving. *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000). For a guilty plea to be voluntary, it must "not be the product of 'actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 750 (1970)). At his plea hearing, Magistrate Hightower properly warned Penney about the consequences of his guilty plea and ensured that he was knowingly and voluntarily entering his guilty plea. Plea Tran. at 11:19—12:16; 14:3—15:21; 17:14—18:9. During the colloquy she would have warned him, among other things, of the penalties he was facing, the range of punishment he faced, and confirmed that he agreed with the factual basis contained in the written plea agreement. *Id*. at 11:19—12:16; 14:3—15:21; 17:6-13. A reviewing court gives great weight to the defendant's statements at the plea colloquy. *See United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). There is nothing in the record that would indicate Penney's plea was not knowingly and voluntarily entered, as required by *Carr*. 740 F.2d at 344; s*ee also United States v. Lampazianie,* 251 F.3d 519, 524 (5th Cir. 2001) ("solemn declarations in open court carry a strong presumption of verity, . . .").

Combined with the signed plea agreement, there is no merit to Penney's motion to withdraw on this factor. For the same reasons as explained above with respect to close assistance of counsel, the mere fact that Mr. Womack did not formally obtain or seek to obtain discovery from the government prior to Penney's plea does not make that plea unknowing or involuntary.

## CONCLUSION

No *Carr* factor weighs in Penney's favor. The Court should find that Penney does not claim actual innocence and that his withdrawal was not prompt. Penney's delay in moving to

withdraw, following the publication of the PSR, demonstrates a tactical decision and Penney's belief that he made a bad decision in pleading guilty. His early admissions of guilt and agreement to cooperate show that there was never any question about his culpability for his criminal actions, therefore his efforts to cast his prior counsel as deficient for failing to formally obtain discovery ring hollow. Mr. Penney knew what he had done, knew there was substantial evidence against him, and knew that his best chance at a lenient sentence lay in admitting his responsibility and offering to provide substantial assistance to the government. Now he regrets the bargain he made and seeks to reverse it, but he lacks any sound reasons for doing so. Penney's motion to withdraw his guilty plea should be DENIED.

Respectfully submitted,

JAIME ESPARZA
UNITED STATES ATTORNEY

*s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorney
Texas State Bar No. 24054497

## Certificate of Service

 I certify that on December 23, 2024, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will serve counsel for the defendant electronically.

*s/ Keith M. Henneke*
Assistant United States Attorney
Texas State Bar No. 24054497
